# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re MCK Millennium Centre Parking, LLC, | Chapter 7 <br> Case No. 12 B 24676 |
| Debtor. | Hon. Jacqueline P. Cox |
| MCK Millennium Centre Retail, LLC, | |
| Appellant, | Case No. 15 C 1163 |
| v. | Judge John Robert Blakey |
| Gina B. Krol, as Chapter 7 Trustee of the Bankruptcy Estate of MCK Millennium Centre Parking, LLC, | |
| Appellee. | |

## MEMORANDUM OPINION AND ORDER

Appellant MCK Millennium Centre Retail, LLC ("MCK Retail") filed a motion for leave to appeal [2] an interlocutory order entered by the Bankruptcy Court that granted the Chapter 7 Trustee's Renewed Application to employ as special counsel Shelly DeRousse and her law firm Freeborn & Peters LLP [B. Dkt. 193]. For the reasons stated below, that motion is denied.

I.  Background

On June 19, 2012, the Debtor, MCK Millennium Centre Parking, LLC ("MCK Parking"), filed a voluntary petition for relief under Chapter 11 of the United States Code. [B. Dkt. 1]. MCK Parking operated a parking garage located at 33 W.

1

Ontario St., Chicago, Illinois. [B. Dkt. 8]. MCK Retail, the appellant here, ran retail operations at that same location.

On July 17, 2012, Shelly DeRousse ("DeRousse") filed her appearance in the underlying bankruptcy on behalf of United Central Bank k/n/a Hamni Bank – the sole secured creditor. *Id*. At the time, DeRousse worked with the law firm Stahl Cowen Crowley Addis LLC ("SCCA"). On September 24, 2012, the Bankruptcy Court appointed Gina Krol ("Krol") as the Chapter 11 Trustee for the Debtor. [B. Dkt. 49]. The Bankruptcy Court subsequently granted Krol leave to appoint DeRousse as special counsel to the Trustee for the limited purpose of pursuing certain claims to recover preferential and/or fraudulent transfers. [B. Dkt. 69-70].

In July 2013, DeRousse – on behalf of Krol – filed an adversary proceeding against MCK Retail. *See Gina B. Krol, as Chapter 11 Trustee v. MCK Millennium Centre Retail, LLC*, Adversary Case No. 13-00961 (USBC N.D. Ill.). In August 2013, DeRousse – on behalf of Hamni Bank – filed a claim in the MCK Parking bankruptcy case. [B. Dkt. 117]. DeRousse also has represented Hamni Bank in Illinois state court proceedings against the principals of the Debtor to collect on guarantees those individuals purportedly made on Hamni's loan to the Debtor. [B. Dkt. 186]. The dates of that representation are unclear from the record but, based on counsel's comments at the April 14, 2015 hearing, it appears to be ongoing.

On September 10, 2013, the Bankruptcy was converted to Chapter 7. Nine days later the Bankruptcy Court again approved DeRousse's employment as special counsel to the Trustee – with full disclosure of DeRousse's representation of Hamni

Bank. [B. Dkt. 128-1, 129]. DeRousse left SCCA and joined Freeborn & Peters LLP ("Freeborn") on April 9, 2014. [B. Dkt. 186 at 4]. DeRousse brought her engagements with Hamni Bank and the Trustee to Freeborn, and the firm ran a check to assure that there were no conflicts of interest. [B. Dkt. 186-1 at 3]. It found none. *Id*. On December 30, 2014, Krol filed a renewed application to employ DeRousse as special counsel to the Trustee. [B. Dkt. 186]. That application was filed to reflect DeRousse's change of firms, not because evidence of a conflict had surfaced. [B. Dkt. 191 at 1-2].

While MCK Retail did not object to the first two applications to employ DeRousse, it filed an objection to the third application on January 12, 2015. [B. Dkt. 190]. MCK Retail argued that DeRousse and Freeborn could not represent Hamni Bank and serve as special counsel to the Trustee without a conflict of interest under 11 U.S.C. § 327(c). [B. Dkt. 190 at 4-5]. MCK claimed that "by representing both the Trustee and the largest creditor, and the only secured creditor of the debtor's estate, there is an unavoidable risk of divided loyalty between Freeborn & Peters' major client, the Hanmi Bank, and the Trustee in this case who has a fiduciary duty to all creditors not just Hanmi Bank." *Id*. at 4. The Trustee responded that DeRousse's engagements did not create a conflict of interest and that DeRousse and Freeborn were best suited to represent the Trustee given their experience in the bankruptcy. [B. Dkt. 191]. The Trustee did not address MCK Retail's standing to challenge the application. The Bankruptcy Court agreed with the Trustee, and granted the renewed application to employ DeRousse and

3

Freeborn as special counsel. [B. Dkt. 193]. MCK Retail now seeks leave to appeal that decision. [2].

Specifically, MCK Retail advances two questions for appeal: (1) "whether the Bankruptcy Court erred by failing to find the existence of a conflict of interest warranting the denial of the Trustee's request to appoint DeRousse and Freeborn as counsel for the Trustee when they were simultaneously representing the largest creditor in an action by that creditor against purported co-obligors of the debtor," and (2) "whether the Bankruptcy Court erred by failing to apply the holding in *In re Penney*, 334 B.R. 517 (Bankr. D. Mass. 2005) to the Application." [2] at 2.

## II.  Standing

Before considering the substantive issues before it, the Court must briefly address the standing arguments raised by the Trustee. The Trustee claims that Appellant does not have prudential standing to appeal under 11 U.S.C. § 327(c) because it is not a creditor. However, the Trustee waived this argument by failing to raise it before the Bankruptcy Court. *National Therapeutic Assocs. v. Concept Rehab, Inc.*, 2000 WL 1468314, at *1 (N.D. Ill. Sep. 29, 2000); *In re Bero*, 110 F.3d 462, 466 (7th Cir.1997). The Court therefore will not consider it.

## III.  Legal Standard

Interlocutory orders from the Bankruptcy Court may be reviewed with leave of the district court sitting in its appellate jurisdiction. 28 U.S.C. § 158(a)(3). While this Court has broad discretion in determining whether to exercise that jurisdiction, *Tr. of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 900 (N.D. Ill. 1997), "leave

4

to appeal an interlocutory order will not be granted absent exceptional circumstances." *In re Pullman Constr. Indus., Inc.*, 143 B.R. 497, 498 (N.D. Ill. 1992).[1]

In determining whether to allow an interlocutory appeal from the Bankruptcy Court under § 158(a), courts apply the general interlocutory appeal standard from 28 U.S.C. § 1292(b). *See Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 359 (7th Cir. 2015). The appellant must satisfy four criteria in order to merit leave to appeal under section 1292(b): (1) there must be a question of law, (2) it must be controlling, (3) it must be contestable, and (4) its resolution must promise to speed up the litigation. A*hrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). The party seeking leave to appeal bears the burden of demonstrating that all four factors are satisfied. *In re Auto. Professionals, Inc.*, 379 B.R. 746, 751 (N.D. Ill. 2007). MCK Retail's motion is denied because it has failed to do so.

## IV. Suitability for Appeal

### a. Question of Law

MCK Retail has not shown that the decision it seeks to appeal presents a pure questions of law. "Question of law" as used in section 1292(b) means "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. The appeal must present a

---

[1] *See also In re OF Fin., Ltd.*, 180 B.R. 510, 512 (N.D. Ill. 1995) (interlocutory appeals "should be the exception rather than the rule") (citation omitted); *In re Bowers–Siemon*, 123 B.R. 821, 825 (N.D. Ill. 1991) ("[i]nterlocutory appeals should be granted sparingly").

"pure" or "abstract" question of law, "something the [district court] could decide quickly and cleanly without having to study the record." *Id.* at 676-77.

Appellant's first proposed question for appeal is whether the Bankruptcy Court erred by failing to find a conflict of interest in DeRousse's representation of both Hamni and the Trustee. This issue is governed by 11 U.S.C. § 327(c), which provides: "In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

Both the Supreme Court and the Seventh Circuit have found that whether "multiple representations in a particular case [give] rise to a conflict of interest" is "a mixed question of law and fact." *Strickland v. Washington*, 466 U.S. 668, 697 (1984); *United States v. Holman*, 314 F.3d 837, 845 (7th Cir. 2002). This Court sees no justification for departing from those findings here. Appellant does not ask that the Court address a "pure" or "abstract" issue of law, such as explaining the "meaning of a . . . statutory provision" (*i.e.*, 11 U.S.C. § 327(c)). Instead, the Appellant's proposed appeal would require that the Court apply the "conflict of interest" provision from 11 U.S.C. § 327(c) to the body of facts relating to the bankruptcy and DeRousse's representations. In doing so, the Court would be required to determine whether DeRousse "serves two competing and adverse interests," or if "competing interests [may] become active if certain contingencies

6

arise." *In re Mundo Custom Homes, Inc.*, 214 B.R. 356, 362 (Bankr. N.D. Ill. 1997). That inquiry, into the interests of the Trustee, Hamni Bank as a creditor, and Hamni Bank as a litigant in Illinois state court, would be highly fact intensive.

Appellant's second proposed question on appeal is "whether the Bankruptcy Court erred by failing to apply the holding of *In re Penney*, 334 B.R. 517 (Bankr. D. Mass. 2005)." [2 at 2]. If the Appellant means to question whether the Bankruptcy Court was legally required to apply a non-precedential holding, this Court thinks the answer is self-evident and declines to exercise its discretionary review. If Appellant means to question whether the non-precedential holding issued by the court in *In re Penney* should have been applied by the Bankruptcy Court, this Court finds that the question is not a "pure" or "abstract" question of law. First, *In re Penney* concerns a conflict of interest analysis. The application of that analysis to the facts here would – as outlined above – be a mixed question of law and fact. Second, the analysis of whether the Bankruptcy Court should have applied another court's holding to the facts here would require that this Court: (1) analyze the other court's legal holding, (2) analyze the facts before the other court, (3) analyze the facts in this matter, (4) analogize or distinguish the two sets of facts, and (5) reach a decision regarding whether the holding from *In re Penney* applies to the facts here. Such an endeavor would be very fact based, and is not the type of inquiry over which this Court has appellate jurisdiction.

### b. Controlling

MCK Retail has not met its burden of showing that its proposed questions for appeal are "controlling" as required by section 1292(b). A question of law is controlling "if its resolution is quite likely to affect the outcome or the further course of litigation, even if it is not certain to do so." *Trustee of Jartran, Inc., v. Winston & Strawn*, 208 B.R. 898, 900 (N.D. Ill. 1997). For instance, courts in this Circuit have found "controlling" questions in the following circumstances:

> **Sufficiency of Complaint:** The Seventh Circuit found that the following question was controlling: "whether the second amended complaint states a claim under the standard for pleading set forth in *Twombley*." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624 (7th Cir. 2010). The court reached that decision because there was "at least a decent chance . . . that were a court to rule the second amended complaint deficient, the case would be over. *Id*. at 624.
>
> **Sovereign Immunity:** In *Sokogon Gaming Enter. Corp. v. Tushie-Montgomery Associates, Inc.,* 86 F.3d 656 (7th Cir. 1996), the court found the following question controlling: whether the Plaintiff tribe had waived its sovereign immunity. The court explained that, if the defendant were to succeed on the appeal regarding sovereign immunity, the case would then be decided on the basis of an already entered arbitration award.
>
> **Federal Preemption:** In *City of Joliet v. Mid-City Nat. Bank*, No. 05 C 6746, 2008 WL 4889038, at *2 (N.D. Ill. June 13, 2008), the court found the following question controlling: whether various clauses of the Constitution, or the doctrine of intergovernmental immunity, preempted or prohibited a municipality from exercising its powers of eminent domain. The court based its decision on the fact that, if the Seventh Circuit were to find that the Plaintiff's eminent domain actions were preempted or prohibited, the district court would likely be required to dismiss the case.

In each of these cases, controlling questions existed because the decision had the real potential to result in the dismissal of the case, or at least a significant change

in the substantive rights at issue between the parties bearing directly on the case's ultimate resolution. That is not true here.

As an initial matter, MCK Retail has entirely failed to explain how the questions at issue here are "controlling." This alone is sufficient to deny the motion for leave to appeal, as Appellant has failed to meet its burden. Even in the absence of any argument from the Appellant, the Court – on its own analysis – finds that the proposed questions are not controlling. Barring DeRousse and Freeborn from representing the Trustee is not likely to affect the course or outcome of this matter. If they were to be replaced, it seems most likely that new counsel for the Trustee would continue prosecuting this matter as directed by the Trustee. Specifically, new counsel would continue pursuing certain claims to recover preferential and/or fraudulent transfers to bring money into the Debtor's estate. The Appellant has provided no evidence to the contrary, and the Court has found none in the record. The sole effect of this appeal, then, would be to require the Trustee to expend time securing new representation, and that representation taking time to learn the case. This falls far short of the controlling questions set out in *In re Text Messaging*, *Sokogon Gaming*, and *City of Joliet*.

### c. Substantial Grounds for Contestability

Appellant's proposed questions do not present substantial grounds for contestability. To prevail on this point, the Appellant is required to demonstrate that a "substantial likelihood exists that the interlocutory order will be reversed on appeal." *Tr. of Jartran*, 208 B.R. at 901. This is more likely if there are

9

"substantial conflicting decisions regarding the claimed controlling issue of law." *In re Kmart Corp.*, No. 04 C 4978, 2004 WL 2222265, at *2 (N.D. Ill. October 1, 2004). That is not the case here.

The issue Appellant seeks to resolve is whether it is a conflict of interest for DeRousse and Freeborn to serve as special counsel to the Trustee in a fairly limited capacity while at the same time representing a creditor – both in the bankruptcy and in a related state court matter. Courts have repeatedly found that such representation is not problematic. *In re Fondiller*, 15 B.R. 890 (Bankr. 9th Cir. 1981); *In re Renninger Mason Contractors, Inc.*, 58 B.R. 516 (Bankr. E.D. Tenn. 1985).

The court in *In re Sarao* addressed an analogous situation, and found that counsel's various engagements did not create a conflict of interest. 444 B.R. 496 (Bankr. D. Mass. 2011). In *In re Sarao*, the bankruptcy trustee sought to employ the firm Fitzhugh and Mariani LLP ("F & M") as special counsel in prosecuting an adversary proceeding against the debtor's father. *Id.* at 497. That proceeding sought to recover certain prepetition transfers by the debtor and to disallow the father's claim to the estate. *Id.* At that same time, F & M also represented Merrill Lynch Commercial Financial Corp. ("ML") in: (1) the Sarao bankruptcy – as the only creditor listed in the schedules of liabilities; (2) an active state court non-dischargeability action against the debtor; and (3) an ongoing state court dispute with the debtor's father. *Id.* at 498-99. Despite those engagements, the Trustee sought to employ F & M as special counsel and ML proposed to pay F & M's fees for

that work.  *Id*.  The Court found that this arrangement was not a conflict of interest, noting that – with regard to the special counsel's goal of maximizing the size of the bankruptcy estate – ML and the trustee's interests were in total alignment.  *Id*. at 500.

The same reasoning applies here.  The interest of the creditor Hamni Bank in pursuing the recovery of preferential or fraudulent transfers to MKE Retail, and thereby increasing the size of the bankruptcy estate, aligns with the estate's interest.  As with *In re Sarao*, the fact that the creditor Hamni Bank is involved in related state court litigation does not affect this determination.  In fact, Hamni Bank's pursuit of funds from the obligors has the potential of increasing the size of the estate in that – to the extent Hamni is made whole by the obligors – it will not need to be compensated out of the estate.  In this way, Hamni may be doing the estate a favor by pursuing another avenue for relief which will lessen its reliance on funds from the estate.  In light of the court's reasoning and holding in *In re Sarao*, which involved much greater potential for a conflict of interest, this Court cannot find that there is a "substantial likelihood" that the Bankruptcy Court's decision would be overturned on appeal.

This finding is not affected by Appellant's principal case, *In re Penney*, 334 B.R 517 (Bankr. D. Mass. 2005), as that case is distinguishable from the present matter.  In *In re Penney*, the chapter 7 trustee sought to retain an attorney who also represented a creditor in the bankruptcy and in outside litigation against the guarantors of the debtor's obligations.  The trustee sought to retain that attorney as

his general counsel, to represent him: (1) in the administration of the debtor's bankruptcy; (2) in "any investigation of the acts, conduct, assets, liabilities and financial condition of the debtor;" (3) with respect to "the prosecution or defense of any action brought by or against the estate;" (4) with respect to "the allowance or disallowance of any claims filed against the Debtor's estate;" (5) with respect to "the preparation of opposing collection and liquidation of the Debtor's assets and any other matters relevant to this proceeding;" and (6) "in connection with any other matters that may be necessary and appropriate in the administration of the case." *Id*. at 518.

The court found that serving as general counsel with such wide ranging responsibilities would create a conflict of interest. It noted that the trustee had a duty to ensure that the creditor's obligation is "first satisfied from assets other than those which might be available to satisfy the claims of the Debtor's remaining creditors." *Id*. at 520. Though the court's explanation is somewhat abbreviated, it seems to imply that allowing the creditor to serve as general counsel in charge of the allowance of claims against the estate would discourage the creditor from pursuing its own reimbursement through other channels (*i.e.*, the loan's co-obligors) and encourage the creditor to grant its own claims against the debtor's estate – thereby harming the other creditors. This is drastically different from the proposed arrangement here. DeRousse and Freeborn will be employed as special counsel in charge of one discrete task. They will have no input or control over the distribution of claims or any other aspect the Trustee's responsibilities.

### d. Resolution will Speed up Litigation

The resolution of Appellant's proposed questions will not hasten the termination of the underlying dispute. Both possible outcomes on appeal promise only delay. *In re IFC Credit*, 2010 WL 1337142, at *3 (N.D. Ill. March 31, 2010). If MCK Retail loses the appeal, the bankruptcy case would likely be delayed during the pendency of the appeal without any corresponding benefit. If MCK Retail were to win, the trustee would be forced to find new counsel who would need to spend a significant amount of time reviewing case material related to the underlying causes of action, facts, and law of the case. Also, a decision on Appellant's proposed questions would not resolve substantive issues or problems currently before the Bankruptcy Court in a way that would help it reach a resolution more quickly – *i.e.*, whether certain claims should be dismissed. Allowing an appeal here would result only in delay, a result that this Court will not entertain.

Appellant relies on *In re Johns-Manville Corp.*, 45 B.R. 833 (S.D.N.Y. 1984), to argue that its appeal should be heard. It claims that, because the court there granted leave to appeal an order appointing counsel, this Court should too. *In re Johns-Manville*, however, is not binding precedent and is distinguishable from this case. There, the court allowed an appeal from the lower court's decision to appoint counsel to represent an indeterminate group of future claimants against the debtor in an asbestos related bankruptcy. *Id.* at 834. That case involved a pure question of law (whether future claimants are entitled to representation), and the answer to the question of law was contestable (two other district courts had reached the

opposite conclusion). *Id*. at 836. Give these differences, *In re Johns-Manville* is not persuasive.

V.  **Conclusion**

For the reasons stated above, and on the record in open court, Appellant's motion for leave to appeal [2] is denied. Civil case terminated.

IT IS SO ORDERED

Dated: April 29, 2015

_____
Judge John Robert Blakey
United States District Court